*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

RYAN CARL SCHROEDER,

      Defendant-Appellant.

UNPUBLISHED
July 10, 2026
12:53 PM

No. 375206
Oceana Circuit Court
LC No. 2024-016537-FH

Before: ACKERMAN, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a), for which the trial court sentenced him to nine months' imprisonment. On appeal, he argues that the trial court erred by denying his motion for a directed verdict. We affirm.

## I. BACKGROUND

This case arises out of defendant's sexual assault of PM. At the time of the assault, PM was 15 years old and defendant was 26.

At trial, PM testified that defendant was in a relationship with her cousin, Ashlyn, and PM frequently stayed overnight at the trailer defendant and Ashlyn shared. PM described the home as a single-wide trailer with two bedrooms and an open common area comprising the kitchen and living room. Defendant and Ashlyn shared one bedroom and the other belonged to Ashlyn's brother, Jaden. When she stayed the night, PM slept on the couch in the living room.

The instant assault occurred in December 2023 or January 2024 while PM was staying with defendant and Ashlyn during winter break. She awoke at approximately 5:00 a.m. to someone groping her breast, kissing her, and masturbating. She opened her eyes, saw defendant, and then closed her eyes and "went back to sleep as he continued to do what he did." When asked about the lighting conditions at the time of the assault, PM testified that it was "in the morning, at, like, 6:00, where there's, like, like just the lightest blue, but like a dark, no, like not—like a dark light blue, where you can, like, everything kind of, like, halos, where you can, like, see everything, but,

-1-

like, barely, type." Though it was dark outside at the time of the assault, the kitchen light was on, and she was sure that defendant was the person she saw assaulting her. The assault lasted less than a half hour.

PM testified that, before the assault, defendant made sexual remarks to her, complimented her body, and told her how much he enjoyed watching her grow. He would also tell her about the pornography he watched and his sexual activities with past partners. She eventually disclosed the assault to her mother, who reported it to police.

Oceana Sheriff's Department Detective Mark Hiddema testified regarding his investigation into the assault. After PM underwent a forensic interview and made disclosures about the assault, Detective Hiddema interviewed defendant. During the interview, the detective informed defendant of PM's disclosures, including an allegation that defendant talked to her about sex toys that he owned. In response, defendant admitted that he showed PM a sex toy called a "pocket pussy" and that he made crude remarks to her. He also acknowledged telling PM "that he thought it was kind of hot how [she] was getting older" and acknowledged making comments to her about his pornography preferences.

At the close of the prosecution's proofs, defendant moved for a directed verdict, arguing that the prosecution had not established the identity of the person who assaulted PM considering the dark lighting conditions and late hour. The trial court denied the motion, referencing PM's testimony explicitly identifying defendant as her assailant.

After closing arguments, the jury found defendant guilty of CSC-IV. The trial court thereafter sentenced him as described above. He now appeals.

## II. DISCUSSION

When reviewing a decision on a directed-verdict motion, we review "the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001), lv den 465 Mich 952 (2002). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Thurmond*, 348 Mich App 715, 721-722; 20 NW3d 311 (2023) (citation omitted). Courts may not "determine the credibility of witnesses in deciding a motion for a directed verdict," *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997), nor "determine what inferences may be fairly drawn from the evidence" or "the weight to be accorded those inferences," *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).[1]

To sustain a conviction for CSC-IV under MCL 750.520e(1)(a), the prosecution was required to prove that the defendant engaged in sexual contact with a person who was between the ages of 13 and 16 while the defendant was 5 or more years older than the other person. Defendant

---

[1] Though *Hardiman* concerned a challenge to the sufficiency to the evidence, the "same standards apply to a motion for a directed verdict." *Thurmond*, 348 Mich App at 722.

did not challenge in the trial court, nor does he challenge now on appeal, that sexual contact occurred or that PM was 15 at the time of the assault. Instead, he argues that the "[lighting] conditions did not allow her to adequately identify the perpetrator."

The evidence, viewed in the light most favorable to the prosecution, was sufficient to permit a rational jury to find that the essential elements of CSC-IV were proven beyond a reasonable doubt. PM testified to the sexual contact that occurred when she was 15, and she explicitly identified defendant, who was then 26, as her assailant. She explained that, after she awoke to someone groping her breast and kissing her, she opened her eyes and saw defendant assaulting her. She acknowledged the early morning hour and dark lighting conditions but asserted that the light in the adjoining kitchen was on, enabling her to identify with certainty that defendant was her assailant.

In arguing that the lighting conditions rendered PM's identification "implausible," defendant asks this Court to make a determination regarding the credibility of that testimony. But courts may not make credibility determinations when deciding or reviewing a motion for a directed verdict. *Mehall*, 454 Mich at 6. PM described the lighting conditions at the time of the assault and asserted that she was able to see defendant assaulting her. Whether that assertion was credible in light of those conditions was a question for the finder of fact. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Because PM's testimony, viewed in the light most favorable to the prosecution, was sufficient to permit a rational jury to conclude that defendant was the individual who sexually assaulted her, the trial court properly denied his motion for a directed verdict.

Affirmed.

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney